# COURT OF APPEALS OF VIRGINIA

Present: Judges Huff,[*] AtLee and Ortiz
Argued at Fairfax, Virginia

PRIMIS BANK

MEMORANDUM OPINION[**] BY
v.      Record No. 1053-23-4          JUDGE DANIEL E. ORTIZ
MARCH 4, 2025

JOSEPH S. MAHALEY, ET AL.

### FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Jeffery T. Martin, Jr. (John E. Reid; Martin Law Group, P.C., on briefs), for appellant.

Bradford S. Bernstein (Matthew L. Devendorf; Richard A. Lash; John E. Rinaldi; Miles & Stockbridge, PC; Buonassissi, Henning & Lash; Walsh, Colucci, Lubeley & Walsh, on brief), for appellees Joseph S. Mahaley and Navy Federal Credit Union.

No brief or argument for appellee Bettye Metters.

In February 2019, Samuel and Bettye Metters conveyed their property to Joseph Mahaley. Unbeknownst to Mahaley, Primis Bank had issued a revolving line of credit to the Metterses, secured by a deed of trust on the property. Despite the deed of trust being recorded in the land records, Mahaley failed to discover it. As a result, none of the sale proceeds went to Primis, and Primis's deed of trust was never extinguished. Mahaley discovered the Primis lien in February 2021 and subsequently commenced this action against Primis and the Metterses. Mahaley complained, inter alia, that the deed of trust should be released because the underlying

_____

[*] Judge Huff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 2024.

[**] This opinion is not designated for publication. See Code § 17.1-413(A).

obligation had been satisfied prior to an attempted modification of the deed of trust in 2012. Following a bench trial, the circuit court agreed with Mahaley, finding the deed of trust void ab initio on those grounds. Additionally, despite Mahaley never pleading fraud in his complaint, the circuit court found that the deed of trust was also void ab initio because Primis had engaged in fraud. The circuit court entered judgment releasing the deed of trust and dismissing the claims against the Metterses.

On appeal, Primis raises thirteen assignments of error and Mahaley three assignments of cross-error. This case presents complex factual and legal issues, and the resolution of this appeal is similarly complicated. In short, for the reasons that follow: we affirm the pretrial rulings of the circuit court, reverse the final judgment of the circuit court against Primis, and remand with instructions to dismiss the claims against Primis and to reconsider the dismissal of the claims against the Metterses.

## BACKGROUND

The relevant facts are undisputed.

In 2000, Samuel and Bettye K. Metters purchased real property in Arlington County ("the Arlington property"). On May 9, 2008, Primis Bank[1] issued two loans to Metters Industries, Inc. The first loan ("Loan 160") was a $2 million term loan, for which Primis recorded a deed of trust ("Primis DOT"), securing the loan with the Arlington property. The second loan ("Loan 212") was a revolving line of credit for $2.5 million that was secured by Metters Industries' assets. In October 2011, the parties amended Loan 212 to increase the maximum borrowing amount to $5 million.

---

[1] At the time, Primis Bank's predecessor in interest was Sonabank.

On May 9, 2012, the Metterses signed a modification to the Primis DOT. A Primis representative signed it on May 10, 2012.[2] Under the modification, the Metterses drew upon Loan 212 to pay off the remaining balance of Loan 160, approximately $50,000, and the deed of trust was amended to secure up to $2 million of the revolving line of credit under Loan 212. The modification contained a waiver stating, "Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust." Additionally, an amendment to the note underlying Loan 212 was signed by the parties on May 9, 2012, increasing the principal to $5.5 million. Primis recorded the modification on May 22, 2012.[3]

In July 2018, Primis sent the Metterses a certified letter stating that Loan 212 was in default and threatening foreclosure if the balance was not paid within 10 days. The Metterses did not comply with these demands, but Primis did not initiate foreclosure proceedings.

In February 2019, the Metterses conveyed the Arlington property by general warranty deed to Joseph Mahaley for $1.67 million in an arm's-length transaction. Mahaley financed the transaction with a $1.3 million loan from Navy Federal Credit Union ("NFCU"), secured by a deed of trust ("NFCU DOT"). At the time of sale, the Arlington property was subject to two liens that were superior to the Primis lien: a loan from Bank of America secured by a deed of trust ("BANA DOT"), and a loan from Wells Fargo (then Wachovia) secured by a second deed of trust ("Wells Fargo DOT"). The sale proceeds first paid off the BANA DOT for $860,449.58,

---

[2] The modification was back-dated to April 25, 2012.

[3] Because the timeline surrounding the modification is complicated and central to the parties' dispute, the exact order of events is worth emphasizing: On May 10, the modification had been signed by both parties and Loan 160 paid off. Also on May 10, the modification purported to shift the underlying obligation of the Primis DOT to Loan 212. Then, on May 22, the modification was recorded. The parties dispute whether the modification was effective on May 10 or May 22, and we address that issue below.

and then paid off the Wells Fargo DOT for $336,324.98; both banks recorded certificates of satisfaction. The Metterses and their assignees received the remaining proceeds, totaling $363,534.57. Primis received no payment.

In February 2021, Mahaley learned about the Primis DOT. In June 2021, Mahaley and NFCU[4] sued Primis and the Metterses seeking release of the deed of trust, quiet title, and an injunction preventing Primis from foreclosing on the Arlington property.[5] In August 2021, Primis initiated foreclosure proceedings. Mahaley moved for a temporary injunction against the foreclosure, which the circuit court granted. In November 2021, having already amended his complaint once, Mahaley filed a second amended complaint, the operative complaint in this case. The ten counts included claims for: (1) a declaration of the validity of the BANA DOT, Wells Fargo DOT, Primis DOT, and NFCU DOT as of the date of sale to Mahaley; (2) release of the Primis DOT; (3) a breach of the warranty of title against the Metterses; (4) equitable subrogation, placing NFCU's lien in a superior position to the Primis DOT; (5) equitable subrogation, placing Mahaley's individual equity interest in a superior position to the Primis DOT; (6) an equitable lien or constructive trust against Primis; (7) a constructive trust against the Metterses; (8) fraud against the Metterses; (9) quiet title; and (10) an injunction preventing Primis from enforcing the Primis DOT. In Count II, the most hotly contested below and on appeal, Mahaley argued that the modification to the Primis DOT was not enforceable and that the Primis DOT was satisfied on May 10, 2012, when Loan 160 was paid in full, regardless of the balance due on Loan 212.

---

[4] Though some counts distinguish between the rights of NFCU and Mahaley against Primis, we refer to the plaintiff-appellees as "Mahaley" unless the distinction is relevant.

[5] Mahaley also sued Bank of America and Wells Fargo, but those claims were later dismissed on demurrer and are not at issue here.

- 4 -

Primis demurred to all counts against it. The circuit court granted the demurrer for Counts I, IV, V, and VI. The circuit court denied the demurrer for Counts II, IX, and X. Additionally, Counts III, VII, and VIII against the Metterses proceeded to trial.

Primis also filed a plea in bar to Count II, asserting that a waiver clause in the modification barred Mahaley's claims that the Primis DOT had been satisfied at the time of modification. The court denied the plea in bar in a written opinion. The court found that "[t]he [m]odification did not take effect until its recordation . . . on May 22, 2012," relying without further explanation on Virginia's recordation statute, Code § 55.1-407. Thus, the court reasoned, the modification occurred after Loan 160 had been satisfied on May 10, 2012, and the question arose "whether there was actually a deed of trust left to modify." Because Primis's waiver defense was contingent on that question, the court allowed Count II to proceed to trial.

In May 2023, following a bench trial, the circuit court held for Mahaley. The court found that the modification was void ab initio for three reasons. First, it concluded that a deed of trust cannot "be modified after its negotiable instrument has been paid in full," and therefore a modification after the note has been satisfied is void ab initio. Second, the court found that Primis fraudulently misrepresented a material fact to the clerk of court when it recorded the modification to Loan 160 after the loan had been paid off, and this fraud left the modification void ab initio. Third, the court found that, based on the language of the modification, the Metterses had not waived their statutory right to a certificate of satisfaction when Loan 160 was paid in full. Additionally, the court granted Bettye Metters's[6] motion to strike because it found that Mahaley and NFCU had presented "no evidence" sufficient to find against her on Counts III, VII, and VIII.

---

[6] Samuel Metters passed away on October 7, 2021, after the commencement of these proceedings.

The court released the Primis DOT from the Arlington property and enjoined Primis from enforcing it through foreclosure or other means. Primis appeals.

ANALYSIS

Primis's thirteen assignments of error on appeal raise three fundamental issues: (1) whether Mahaley has standing to challenge the Primis DOT; (2) whether the express waiver in the Primis DOT modification bars Mahaley from challenging its validity; and (3) assuming Mahaley can challenge the Primis DOT, whether the modification is enforceable. In considering this final question, we must determine whether the circuit court erred on each of its grounds for finding the modification void ab initio. We must also consider whether it erred in failing to apply the conclusive presumption set forth in Code § 55.1-602 that recorded writings are in proper form after three years. Then, we address Mahaley and NFCU's assignments of cross-error, which contend that the circuit court erred by (1) sustaining the demurrer to their claims for equitable subrogation, and (2) dismissing the claims against Metters following trial. In short, we hold that Mahaley does have standing to seek release of the lien on his property but that the circuit court nonetheless erred in entering judgment against Primis at trial. We further hold that the circuit court properly sustained the demurrer to Mahaley's equitable subrogation claim and that the circuit court must reconsider its dismissal of the claims against Metters.

I. Standing

In its first assignment of error, Primis asserts that the circuit court erred in denying its demurrer as to Count II of the complaint because Mahaley lacks standing to seek release of the Primis DOT. Primis argues that, because "[t]he Complaint contains no allegations that the Appellees are in contractual privity with Primis Bank with respect to the Primis DOT," Mahaley cannot "contest the terms."

A demurrer tests "the legal sufficiency of the facts properly alleged in the challenged pleading and the inferences fairly drawn from those facts, all of which are accepted as true." *Murayama 1997 Tr. v. NISC Holdings, LLC*, 284 Va. 234, 245 (2012). "Because the decision whether to grant a demurrer involves issues of law, we review the circuit court's judgment de novo." *Dreher v. Budget Rent-A-Car Sys., Inc.*, 272 Va. 390, 395 (2006).

Turning to Primis's argument, "[t]he purpose of requiring standing is to make certain that a party who asserts a particular position has the legal right to do so and that his rights will be affected by the disposition of the case." *Small v. Fannie Mae*, 286 Va. 119, 125-26 (2013) (quoting *Goldman v. Landsidle*, 262 Va. 364, 371 (2001)). Primis is correct that, "generally, one who is not in privity of contract cannot attack the validity of the contract," *Wells v. Shoosmith*, 245 Va. 386, 392 (1993), and, here, Mahaley was not a party to the Primis DOT or modification. But Primis misinterprets the nature of Mahaley's claim as one requiring contractual privity. Mahaley's standing to seek release of the Primis DOT comes from his status as a property owner and is grounded in the language of Code § 55.1-344(A).

When a party seeks relief under a statute, the standing inquiry "does not turn simply on whether the plaintiff has a personal stake in the outcome of the controversy," rather, "the plaintiff must possess the 'legal right' to bring the action, which depends on the provisions of the relevant statute." *Small*, 286 Va. at 126 (internal quotation marks and citation omitted). Here, Code § 55.1-344(A) states:

> Any person who owns or has any interest in real estate or personal property on which an encumbrance as described in § 55.1-339 exists may, after 20 days' notice to the person entitled to such encumbrance, apply to the circuit court of the county or city in which such encumbrance is recorded to have the same released or discharged. Upon proof that the encumbrance has been paid or discharged . . . such court shall order the clerk to record a certificate of satisfaction or a certificate of partial satisfaction that, when so recorded, shall operate as a release of such encumbrance.

Looking to the "provisions of the relevant statute," Mahaley is firmly within its scope. *Small*, 286 Va. at 126. Mahaley is the "person who owns" the Arlington property, Primis's "encumbrance . . . exists" on it, and he seeks release of that encumbrance. Code § 55.1-344(A). Primis argues that Mahaley cannot contest "the terms of the Primis DOT," but this concern misunderstands Mahaley's claim; Mahaley does not seek to disturb the terms of the Primis DOT as they pertain to Primis and Metters. Rather, Mahaley has a separate legal right under Code § 55.1-344, which "will be affected by the disposition of the case." *Small*, 286 Va. at 126. Accordingly, Mahaley has standing to seek release of the Primis DOT, and we affirm the circuit court's denial of Primis's demurrer to Count II.

## II. Express Waiver

Primis next assigns error to the circuit court's denial of its plea in bar to Count II of the complaint. Primis argues that the claim should have been dismissed because the express waiver in the modification barred Mahaley from asserting a cause of action.

"A plea in bar presents a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery." *Hilton v. Martin*, 275 Va. 176, 179 (2008). When the facts underlying a plea in bar are undisputed, leaving solely a question of the circuit court's application of the law, as here, we review the circuit court's decision de novo. *See id.* at 180.

The modification's waiver states in relevant part, "Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust . . . . This waiver applies not only to any initial extension or modification, but also to all such subsequent actions." In its memorandum opinion denying the plea in bar, the circuit court reasoned that, because Mahaley challenged the fundamental validity of the modification, any defenses raised under its terms were in question. We agree with the circuit court's reasoning.

By asserting that the express waiver bars Count II of Mahaley's claim, Primis asks for this Court to construe the terms of the modification. But, in so doing, Primis assumes Mahaley's entire legal argument—that the effect of the modification's terms on him are irrelevant because the modification itself is void ab initio. At the pleadings stage, the circuit court properly deferred judgment on the effect of the waiver until it had determined the validity of the instrument. We accordingly affirm the circuit court's denial of Primis's plea in bar.[7]

### III. Validity of the Deed of Trust Modification

Primis's remaining assignments of error all fundamentally flow from the question of whether the 2012 modification to the Primis DOT was valid and therefore whether the Primis DOT should have been released. In its memorandum opinion following trial, the circuit court found that the modification between the Metterses and Primis was void ab initio for three reasons. First, the court found that the modification was not effective until the day of recordation, rather than the day of execution. According to the circuit court, this meant that Loan 160 was paid off before the securing instrument could be modified, rendering such modification void. Second, it found that Primis engaged in fraud when modifying the deed of trust. And, third, it found that Primis failed to file a certificate of satisfaction once Loan 160 had been paid in full. We hold that the circuit court erred in each of those findings. We further hold that Primis was entitled to the conclusive presumption set forth in Code § 55.1-602, and, as a result, the circuit court erred by not dismissing Mahaley's claim against Primis on that ground.

---

[7] Because we hold below that the modification was *not* void ab initio and that the Primis DOT *is* a valid lien on the Arlington property, on remand it may become necessary for the circuit court to re-examine this issue. But, at this stage, we offer no opinion regarding the effect of the express waiver on further proceedings.

A. The circuit court erred in finding that the deed of trust modification was not effective between the parties until recordation.

"We review questions regarding the validity and effect of deeds and other written legal documents de novo." *Evans v. Evans*, 290 Va. 176, 183 (2015).

In the circuit court's memorandum opinion denying Primis's plea in bar, it held that the modification "did not take effect until its recordation," providing a single citation to Virginia's recordation statute, Code § 55.1-407. In its final memorandum opinion, the circuit court reiterated that the modification did not take place until May 22, 2012, "*after* the Loan 160 note was satisfied," and therefore found that the modification was void ab initio. (Emphasis added).

Virginia's recordation statute, Code § 55.1-407, provides, in short, that an instrument is void as to *subsequent purchasers* and *lien creditors* who lack notice of it until recorded properly.[8] The purpose of any recordation statute is to ensure that "subsequent transferees" and certain "judgment creditors" are assured that title shown in the land records is accurate. 11 John L. McCormack, *Thompson on Real Property* § 92.04(a) (2024). Although failure to record may affect a transferee's claim to title against a third party, recordation is not a prerequisite to validity between the initial parties to an instrument. *See id.*; *Hunton v. Wood*, 101 Va. 54, 58 (1903) ("[A] deed is good between the parties, and, if not duly admitted to record, is void only as to

---

[8] The full relevant text provides:

> Every (i) contract in writing; (ii) deed conveying any estate or term; (iii) deed of gift, or deed of trust, or mortgage conveying real estate or personal property; and (iv) bill of sale, or contract for the sale of personal property, when the possession is allowed to remain with the grantor, shall be void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors, until and except from the time it is recorded in the county or city in which the property subject to such contract, deed, or bill of sale is located.

Code § 55.1-407(A)(1).

creditors and subsequent purchasers."); *Currie v. Donald*, 2 Va. 58, 63 (1795) ("The apparent object of the law [requiring recordation] was to secure creditors and subsequent purchasers, and *not to affect the parties*." (emphasis added)). In fact, with respect to the validity of an instrument when a party lacks notice, the statute specifically excepts "parties thereto." Code § 55.1-407(A)(1). Neither the circuit court nor Mahaley cites to legal authority suggesting that a deed of trust is effective between its parties only once recorded, and this Court knows of no such legal principle. We therefore hold that it was error for the circuit court to find that the modification occurred on the date of recordation, and we reiterate the principle that a deed of trust is effective between the parties at the time of its execution.

With that in mind, determining the effective date of the modification in this case is straightforward. The Metterses signed the modification on May 9, and Primis signed it on May 10. The remaining balance of Loan 160 was paid on May 10, and the modification was recorded on May 22. Mahaley adduced no evidence indicating that Loan 160 had been paid off prior to execution of the modification, and the record provides none. Thus, we find that the modification was effective on May 10, prior to Loan 160 being paid off, and we reverse the circuit court's judgment that the timing of the modification rendered it void ab initio.

B. The circuit court erred by finding that Primis committed fraud.

In its post-trial memorandum opinion, the circuit court found that Primis "willfully misrepresented a material fact to the Clerk of the Court" in order to avoid paying recordation tax on the DOT modification. Relying on a single email exchange between Primis and a title insurance company, the circuit court found "by clear and convincing evidence" that Primis modified Loan 160 "to avoid the statutorily required recordation tax for a new deed of trust." We hold that the circuit court erred, first, by considering this issue because Mahaley failed to

- 11 -

plead fraud in his complaint; and, second, even assuming that Mahaley had pleaded fraud, the circuit court was plainly wrong to find that Primis committed fraud in this case.

1. Mahaley failed to plead fraud.

> A litigant's pleadings are as essential as his proof, and a court may not award particular relief unless it is substantially in accord with the case asserted in those pleadings. Thus, a court is not permitted to enter a decree or judgment order based on facts not alleged or on a right not pleaded and claimed.

*Jenkins v. Bay House Assocs., L.P.*, 266 Va. 39, 43 (2003) (citations omitted). In Virginia, fraud must be pleaded with particularity. *See Southall v. Farish*, 85 Va. 403, 410 (1888) ("[N]othing—and least of all *fraud*—can be the subject of trial, until it is put in issue. . . . [T]he bill must show, specifically and in detail, in what the fraud consists, and how it was effected, so that the defendant may have the opportunity of shaping his defen[s]e . . . ." (internal quotation marks and citation omitted)); *accord Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295 (1996).

In his complaint, Mahaley advances only one allegation related to Primis's purpose in recording the DOT modification. The complaint states: "Primis learned the cost to record a new deed of trust for Loan 212 would be in the thousands of dollars. . . . In order to save recording fees, Primis prepared the Modification and attempted to shift the Primis DOT from securing Loan 160 to securing Loan 212." Nowhere does the complaint allege that Primis sought to save recording fees—an otherwise reasonable goal—by deceiving or otherwise defrauding the clerk of the court. Most importantly, Mahaley did not include a separate count of fraud against Primis. As a result, Primis was not on notice that it needed to "shap[e] [its] defen[s]e" to a fraud claim or that such a claim was fair game for the circuit court's consideration. *Southall*, 85 Va. at 410; *cf.* Rule 1:4(d) ("Every pleading must state the facts on which the party relies . . . it is sufficient if it *clearly informs the opposite party of the true nature of the claim* or defense." (emphasis added)).

- 12 -

In his brief, Mahaley argues that "[c]ourts have the inherent authority to provide relief from the consequences of a fraudulent act," citing to *Wampler v. Wampler*, 71 Va. (30 Gratt.) 454 (1878). But he fails to acknowledge that, in *Wampler*, there was "a positive and distinct allegation of fraud in the bill." 71 Va. (30 Gratt.) at 458. The Court referred to its "inherent" equitable jurisdiction only *after* establishing that the complaint provided specific grounds for equity due to fraud. *Id.* at 459. Mahaley's reliance on *Wampler* is thus misplaced.

Accordingly, because the circuit court "enter[ed] a . . . judgment order based on . . . a right not pleaded and claimed" by Mahaley, we reverse on its finding of fraud on that ground. *Jenkins*, 266 Va. at 43.

> 2. Assuming arguendo that Mahaley properly pleaded fraud, Primis did not behave fraudulently in this case.

In the alternative, we also find that the circuit court plainly erred on the merits of its fraud finding.

> [W]hen a case is decided by a [trial] court without the intervention of a jury and a party objects to the decision on the ground that it is contrary to the evidence, the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it.

Code § 8.01-680; *accord Snead v. C&S Props. Holding Co.*, 279 Va. 607, 613 (2010). At issue here, "Fraud may be proved by direct or circumstantial evidence, but must be clearly and convincingly established." *Gelber v. Glock*, 293 Va. 497, 531 (2017). The "clear and convincing" standard of proof is higher than the "preponderance" standard, and it "affords the fact finder a firm belief or conviction concerning the allegations that a party seeks to establish." *Commonwealth v. Miller*, 273 Va. 540, 551 (2007). The issue is thus whether the circuit court in this case was "plainly wrong" to find by clear and convincing evidence that Primis acted fraudulently when modifying and subsequently recording its deed of trust.

- 13 -

The elements of actual fraud are: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308 (1984). On appeal, Primis contends there was insufficient evidence to support a finding that Primis knowingly made a false representation to the clerk of court with the intent to avoid recordation taxes.

The circuit court explained its fraud finding as follows:

> At trial, Primis did not explain its predecessor's action of using the Loan 160 deed of trust for the unrelated, and unsecured, Loan 212 credit line note. But the record shows, by clear and convincing evidence, Sonabank acted to avoid the statutorily required recordation tax for a new deed of trust, here in the approximate amount of $10,000.00.

To support its finding, the court provided one record citation, an email exchange between Primis and a title company discussing how much recordation tax would be owed on the modification. The email exhibit begins with a Primis employee expressing surprise over finding out that $10,000 of taxes might be due. The title company employee responds stating, incorrectly, that the deed of trust will now secure $5 million, $3 million more than Loan 160, and therefore that taxes will be owed on the "new money." The Primis employee then corrects the title employee, informing her that the modification will only secure up to $2 million, the same amount as Loan 160. Upon receiving this information, the title employee changes her mind to agree with Primis that it "will only need $21," rather than $10,000, to record. But she advises Primis, "I suspect the Clerk will ask lots of questions." The Primis employee then responds, "OK." For the purpose of our analysis, we assume without deciding that materially more than $21 in taxes was, in fact, owed upon recordation, and we address only Primis's intent.

This email exchange, the only evidence in the record indicating Primis's intent when paying recordation tax, falls far short of establishing Primis's "intent to mislead." Nowhere does

the employee indicate that Primis believed it should pay the higher number, and nowhere does she indicate that Primis deliberately sought to pay less than it should.  Instead, the Primis employee expresses surprise at a potentially high-dollar amount, takes care to clarify the lien amount, and then the title company employee ultimately *agrees* with Primis.  While it is true that the title employee speculated that "the Clerk will ask lots of questions," there is no reason to believe on this record that the company's opinion is indicative of Primis's fraudulent intent.  Without more, this email exchange cannot establish Primis's fraudulent intent at the time of recordation by clear and convincing evidence.  We accordingly hold that the circuit court was plainly wrong to find fraud on the merits, and reverse its judgment on that ground, as well.

C.  The circuit court erred in relying on the certificate of satisfaction statute.

The circuit court also noted Primis's failure to file a certificate of satisfaction once "Loan 160 was paid in full," as required by Code § 55.1-339.  Section 55.1-339 states in relevant part, "[A]fter full or partial payment or satisfaction has been made of a debt secured by a deed of trust . . . the lien creditor shall issue a certificate of satisfaction."  Code § 55.1-339(B)(1).  Once the certificate of satisfaction has been issued, it "shall operate as a release of the encumbrance as to which such payment or satisfaction is entered and, if the encumbrance is by deed of trust, as a reconveyance of the legal title."  Code § 55.1-339(D).

It is unclear from the circuit court's opinion exactly why it discussed this provision.  The court stated, "Issuing a certificate of satisfaction is not a choice left to the discretion of creditors. . . .  No evidence was presented to demonstrate that when Samuel Metters and Bettye Metters signed the modification deed of trust on May 9, 2012, they intended to waive Sonabank's statutory obligation to issue a certificate of satisfaction on Loan 160."  But, based on the opinion's structure, it is unclear whether the circuit court viewed Primis's failure to issue a certificate of satisfaction as additional evidence of fraud or, instead, if it viewed this provision as

a separate and sufficient basis for finding the Primis DOT modification void ab initio. Regardless of the court's intention, we now hold that it was error for it to rely on Code § 55.1-339.

Under the statute, a certificate of satisfaction applies to "debt[s] secured by a deed of trust," and, when issued, operates as a "release of the encumbrance." Code § 55.1-339(B)(1), (D). As we have already discussed, however, on May 10, 2012, Primis and the Metterses executed a modification to the Primis DOT that shifted the underlying obligation from Loan 160 to Loan 212. *See supra*. This meant that, at the time of its payoff on May 10, Loan 160 was no longer "a debt secured by a deed of trust," Code § 55.1-339(B)(1); instead, the Primis DOT secured Loan 212 and continued to encumber the Arlington property. In other words, Primis was never required to issue a certificate of satisfaction for Loan 160 because Loan 160 was not satisfied *while being secured by* the Primis DOT.[9]

Accordingly, whatever the circuit court's purpose for relying on the fact that Primis did not file a certificate of satisfaction, we hold that it was error.

D. The circuit court erred by failing to apply the conclusive presumption of proper form contained in Code § 55.1-602.

Having found grounds for reversal in each portion of the circuit court's memorandum opinion, we turn next to an issue the court did not consider. Primis assigns error to the circuit court's failure to apply the conclusive presumption set forth in Code § 55.1-602. The statute provides in relevant part:

> All recorded writings shall be presumed to be in proper form for recording after having been recorded, and conclusively presumed to be in proper form for recording after having been recorded for a period of three years, except in cases of fraud.

---

[9] Because the circuit court found that the modification was not effective until May 22, it is understandable that the court would have then found that Primis failed to properly file a certificate of satisfaction after Loan 160's payoff on May 10.

- 16 -

Code § 55.1-602. Primis first asserted this statute's application in its supplemental brief to the circuit court following trial. Primis argued that Mahaley was "*barred* by statute from objecting to the form of the Modification" because the DOT modification had been recorded some nine years prior to Mahaley commencing this action. (Emphasis added). In its subsequent memorandum opinion, the circuit court did not reach this question because, as discussed at length above, it found that the DOT modification was void ab initio. In its written objections following the circuit court's opinion, Primis specifically noted the applicability of § 55.1-602. On appeal, Primis again asserts that plaintiffs are "barred" by the "3-year limitation period" and that the trial court erred in failing to apply the statute in its ruling. Because this issue was raised in the circuit court, briefed by the parties on appeal, and it presents an application of law to undisputed facts, we consider it now. *See* Rule 5A:18, 5A:20(c).

Primis's description of Code § 55.1-602—a "limitation period" that "barred" Mahaley from objecting to the form of the DOT modification—raises the question whether a conclusive presumption with a temporal condition precedent is, as a matter of law, a statute of limitations, or whether it performs a different function. The answer is significant to this case because the statute of limitations is an affirmative defense that must be asserted in a defendant's responsive pleading, Code § 8.01-235, but Primis did not raise this defense in its answer or plea in bar. It first argued § 55.1-602 only in its supplemental brief following trial. Thus, if § 55.1-602 is a statute of limitations, Primis has waived its ability to argue it, and we need not consider § 55.1-602's applicability further. For the reasons stated below, however, we hold that a temporally-limited conclusive presumption is not a statute of limitations; therefore, Primis was not required to plead the statute of limitations to assert § 55.1-602. We then examine the provision's applicability and hold that the circuit court erred in failing to apply the conclusive presumption in this case.

- 17 -

1. A conclusive presumption is not a statute of limitations; therefore Primis was not required to plead the statute of limitations in this case.

To determine whether the conclusive presumption in Code § 55.1-602 is a statute of limitations, we must first define the relevant terms. A statute of limitations "is a procedural statute, one which creates a temporal bar to the maintenance of a legal remedy arising out of an accrued cause of action." *Sch. Bd. v. U.S. Gypsum Co.*, 234 Va. 32, 36 (1987). "Generally, a statute of limitations prescribes a period of time in which the person with a cause of action must file pleadings to enforce that cause of action." *Long, Long & Kellerman, P.C. v. Wheeler*, 264 Va. 531, 536 (2002). If the claimant fails to file pleadings within the period and the defending party asserts the statute of limitations, the claimant's right to file the action will be defeated. *Id.*

On the other hand, a conclusive presumption is defined "as an inference which must be drawn from proof of a given fact or facts, which no evidence, however strong . . . will be permitted to overcome." *Miller v. Commonwealth*, 172 Va. 639, 651 (1939). Although Virginia courts have never specifically compared a conclusive presumption to a statute of limitations, other jurisdictions have distinguished the two persuasively. Unlike a statute of limitations, which creates a procedural bar, "[a] conclusive or irrebuttable presumption is . . . a *substantive* rule of law directing that proof of certain basic facts conclusively provides an additional fact which cannot be rebutted." *Davis v. Provo City Corp.*, 193 P.3d 86, 90 (Utah 2008) (first alteration in original) (emphasis added) (quoting 29 Am. Jur. 2d *Evidence* § 184 (2007)). A legislature's decision to provide a conclusive presumption "rests upon grounds of expediency or policy so compelling in character as to override the generally fundamental requirement of our system of law that questions of fact must be resolved according to the proof." *Id.* (quoting *United States v. Provident Tr. Co.*, 291 U.S. 272, 281-82 (1934)). Additionally, some conclusive presumption provisions, such as the one at issue today, contain temporal limitations, while others do not. *See, e.g.*, Code § 65.2-515(A) (conclusive presumption with no temporal specification);

- 18 -

Code § 15.2-5126 (conclusive presumption with thirty-day specification); Code § 15.2-6409 (same). But, regardless of any time specification, "when considering the application of conclusive presumptions, it is important to understand they are evidentiary rules affecting the *merits* of an action and not procedural time limits on bringing an action." *Salem Grain Co. v. City of Falls City*, 924 N.W.2d 678, 690 (Neb. 2019) (emphasis added).

Applying these principles to Code § 55.1-602, despite Primis's reference to this provision as a "limitation period," § 55.1-602 does not provide a statute of limitations. Section 55.1-602's text does not contain language of bar or otherwise provide a time in which a plaintiff must commence a particular cause of action or else lose their right to bring it. *Cf.* Code § 8.01-243(A) ("[E]very action for personal injuries . . . shall be brought within two years . . . ."); Code § 8.01-236 ("No person shall . . . bring an action to recover[] any land unless within fifteen years . . . after the time at which the right to . . . bring such action shall have first accrued . . . ."). Section 55.1-602's location in the Code further suggests that the General Assembly did not intend for it to operate like statutes of limitation, which are specifically addressed in Title 8.01, Chapter 4. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 168 (2012) ("[T]he meaning of a statute is to be looked for, not in any single section, but in all the parts together . . . ." (alteration in original) (quoting *Panama Refin. Co. v. Ryan*, 293 U.S. 388, 439 (1935) (Cardozo, J., dissenting))). Notably, Chapter 4 includes specific limitations periods for actions concerning the type of subject matter at issue here, recovery of and liens on real estate. *See* Code §§ 8.01-236 to -242.

Rather than providing language of procedural limitation, Code § 55.1-602 provides that, if a certain fact is proved (a writing having been recorded for three years), then another fact must be "conclusively presumed" (the writing's proper form). *Cf.* 29 Am. Jur. 2d *Evidence* § 198 (2019) (explaining that a conclusive presumption directs that "proof of certain basic facts

conclusively provides an additional fact which cannot be rebutted"). In other words, § 55.1-602 imposes a rule of substantive law in the event of a particular factual scenario, rather than a procedural requirement, like a statute of limitations. Thus, Primis was not required to raise the statute of limitations in its responsive pleadings to assert § 55.1-602.

        2. The circuit court erred in failing to apply the conclusive presumption of proper form.

Having established that Primis had not procedurally waived its ability to argue Code § 55.1-602, the next issue is whether the circuit court erred in failing to apply the conclusive presumption in its ruling on the merits.

On its face, Code § 55.1-602 creates a conclusive presumption that all real estate instruments recorded for a period of three years are in "proper form," except in cases of fraud. "Proper form" is not defined in the Code, but it refers to facial conformity with technical requirements in the instrument, as opposed to the instrument's substance. *See Form*, *Ballentine's Law Dictionary* (3d ed. 1969) ("[T]he appearance or superficial aspect rather than the substance or the essence."); *Form*, *Black's Law Dictionary* (11th ed. 2019) ("The outer shape, structure, or configuration of something, as distinguished from its substance or matter . . . ."); *see also Bowman v. Samuel*, 113 Va. Cir. 374, 376 (Norfolk 2024) ("§ 55.1-602 . . . reveal[s] the statutory purpose that a recorded deed put a purchaser on notice, not whether the deed complies with technicalities."). As discussed, conclusive presumptions evince a legislative interest in "expediency" over process to advance a particular public policy. 29 Am. Jur. *Evidence*, *supra* § 198. Section 55.1-602 demonstrates the General Assembly's concern for subsequent purchasers having notice of an instrument, even if flawed, so that technicalities do not disrupt the chain of title and lead to unnecessary litigation down the line. The provision's narrow carve-out in cases of fraud, and other provisions on recordation, evinces a similar intent to leave recorded instruments undisturbed. *See, e.g.*, Code § 17.1-223(E) ("If the writing is accepted [by the clerk]

for recordation in the deed books, it shall be deemed to be validly recorded for all purposes."); Code § 55.1-606 ("If a writing that does not conform to the requirements of this section . . . is accepted [by the clerk] for recordation, it shall be deemed validly recorded . . . .").

Here, the Primis DOT modification was recorded on May 22, 2012, and Mahaley did not file an action challenging the validity of the modification until over nine years later, in June 2021. Thus, with more than three years having passed, there is no question that the conclusive presumption contained in Code § 55.1-602 is applicable to questions of proper form in this case.

The next question is whether Mahaley's challenge to the modification's validity is one based on the instrument's "form," or whether he asserts some other basis that would circumvent Code § 55.1-602. In Mahaley's brief, in arguing the inapplicability of this statute, he primarily relies on the fraud exception. But, as we have already established, Mahaley failed to both plead and prove fraud, and is thus unable to raise the issue now on appeal. *See supra*. Additionally, we have similarly rejected Mahaley's argument that the modification was invalid because the underlying debt is satisfied and there was nothing for the instrument to secure; the modification was effective on the date of execution, not the date of recordation, prior to Loan 160's pay-off. *See supra*.

The only other basis Mahaley offers for finding the modification invalid is Primis's failure to comply with the notice requirements for a credit line deed of trust. Code § 55.1-318(B) states that a credit line deed of trust "shall set forth on the front page, either in capital letters or in language underscored, the words 'THIS IS A CREDIT LINE DEED OF TRUST.'" Primis failed to include this language anywhere in the modification. Mahaley correctly points out the significance of these notice requirements for a credit line deed of trust, which warn subsequent purchasers that, unlike in a term loan deed of trust, additional advances may be drawn against the

security.  Notwithstanding this purpose, however, this provision is quintessentially one dealing with the instrument's form.

A requirement to include certain words concerns the appearance or configuration of the instrument, rather than its subject matter or terms.  Primis's failure to include the statutory language did not change the fact that the modification secured Loan 212, a line of credit.  And it did not change the fact that Primis recorded the modification, thereby putting subsequent purchasers, including Mahaley, on notice that it encumbered the property.  In other words, Primis's failure to include this statutory language did nothing to affect the substance of the transaction between it and the Metterses.  While this technical argument may have been grounds for challenging the modification at an earlier time, the General Assembly set forth a clear intention in Code § 55.1-602 that such challenges to form should not disrupt the chain of title or lien priority once enough time had passed.

In sum, Code § 55.1-602's conclusive presumption of proper form is applicable to this case.  Because we have already held that Mahaley's fraud and timing challenges to the modification are unavailing, and because his only remaining argument goes to form, the conclusive presumption is dispositive on the merits here.  The Primis DOT modification was therefore a valid lien on the Arlington property, and we accordingly remand to the circuit court with instructions to dismiss Count II of Mahaley's complaint seeking its release.

### IV.  Mahaley's Assignments of Cross-Error

On appeal, Mahaley stipulates that the circuit court did not err by granting judgment in his favor below.  But, if this Court reverses that judgment, as we have done today, he assigns error to (1) the circuit court sustaining the demurrer to Counts IV and V of the complaint requesting equitable subrogation, and (2) its dismissal of his claims against Metters.  We consider both arguments below.

A. The court properly sustained the demurrer to Mahaley and NFCU's claims for equitable subrogation.

Again, we review a decision to sustain a demurrer de novo. *Dreher*, 272 Va. at 395. Additionally, we "accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Taylor v. Aids-Hilfe Koln, e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)).

In their complaint, Mahaley and NFCU sought to subrogate the NFCU DOT and Mahaley's equitable interest in the Arlington property to a position of priority, ahead of the Primis DOT. "Subrogation is the substitution of another person in the place of the creditor to whose rights he succeeds in relation to the debt." *Fed. Land Bank v. Joynes*, 179 Va. 394, 401 (1942). Subrogation is a "creature of equity" that is founded on "principles of natural justice"; thus, it is not dependent on a party's contractual rights or privity between the parties. *Id.* Rather, it is "dependent upon the facts and circumstances of each particular case." *Id.* at 402. Although no "bright-line rule" exists for when equitable subrogation is appropriate, our Supreme Court has acknowledged two guiding principles: "First, subrogation is not appropriate where intervening equities are prejudiced. Second, ordinary negligence of the subrogee does not bar the application of subrogation where '[a]n examination of the facts . . . shows that the equities *strongly favor*' the subrogee." *Centreville Car Care v. N. Am. Mortg. Co.*, 263 Va. 339, 345 (2002) (alterations in original) (citation omitted) (quoting *Fed. Land Bank*, 179 Va. at 405).

Both Mahaley and Primis cite to *Centreville Car Care, Inc. v. North American Mortgage Co.* in their briefing as support for their positions. Because the circumstances of that case are very similar to the case at hand, we examine it in detail.

In *Centreville*, Lynch bought a property for $210,000. *Id.* at 342. The purchase was financed by a $199,500 loan from a bank, secured by a first deed of trust on the property. *Id.*

Lynch then borrowed $150,000 from Centreville Car Care, secured by a second deed of trust on the property that was inferior in priority to the first deed of trust. *Id.* Then, Lynch conveyed the property to the Bouzghaias for $210,000. *Id.* at 343. The Bouzghaias financed the purchase price with a loan from North American Mortgage Company, secured by a third deed of trust. *Id.* The title examiner for North American, however, failed to discover the Centreville deed of trust during the closing process. *Id.* The proceeds of the sale went first to Lynch's bank, who extinguished the first deed of trust, and then to Lynch herself. *Id.* None of the sale proceeds went to Centreville Car Care. *Id.* Thus, its deed of trust was never extinguished, and Centreville remained in a position of priority over North American Mortgage Company. *Id.* North American ultimately filed an action seeking equitable subrogation of its deed of trust to Centreville's. *Id.*

Applying the above-mentioned guiding principles, the Supreme Court first examined whether the "intervening equities," i.e., Centreville's lien, would be prejudiced. *Id.* at 345, 346-47. The Court noted that, although Centreville was initially under-secured because of the first deed of trust having priority over it, Centreville still had the right to anticipate that, when the first deed of trust was extinguished, its lien would advance to the first priority position. *Id.* at 346-47. Additionally, the Court held that Centreville was prejudiced because it was entitled to receive the proceeds from the sale that went to Lynch after the first deed of trust was extinguished. *Id.* at 347.

The Supreme Court next examined whether, despite North American's "ordinary negligence" in failing to discover the Centreville deed of trust during the closing process, the equities nevertheless "strongly favor[ed]" North American. *Id.* at 345, 347. The Court held that the equities fell "far short" of favoring North American, first, because subrogation would simply lead to the Bouzghaias and North American affecting a "friendly foreclosure," thereby leaving

- 24 -

Centreville with little or no recovery under the foreclosure sale. *Id.* at 347. Second, if subrogation were granted, the obligor to Centreville, Lynch, would have little incentive to pay her debt to protect her remaining equitable interest in the property. *Id.* And, third, the Court rejected North American's argument that, if it were not permitted to subrogate, Centreville would receive a "windfall" far in excess of what it originally expected to be secured. *Id.* at 348. The Court observed that, while Centreville undoubtedly benefitted from advancing in priority, if subrogation were permitted, any "windfall" would "inure to the benefit of the negligent title examiner and the party that insured the title," against whom North American would still have had recourse. *Id.* In contrast, Centreville would have been left with little to no recourse to enforce its lien. *Id.*

Mahaley notes, as an initial matter, that *Centreville* was decided after a full trial, while his counts were dismissed at the demurrer stage. But, even considering only the allegations in Mahaley's complaint in the light most favorable to him, the similarities of *Centreville* to this case compel us to reach a similar result.

Here, as in *Centreville*, Mahaley failed to discover through title examination Primis's lien on the Arlington property, and Mahaley paid off superior lienors and the Metterses without paying Primis. Like Centreville Car Care, Primis was entitled to believe that its lien would assume the first priority position after the BANA and Wells Fargo DOTs were extinguished, and Primis was entitled to believe that it would receive the balance of sales proceeds that instead went to the Metterses. Thus, the "intervening equities" were similarly prejudiced.

Additionally, although Mahaley's "ordinary negligence" in failing to discover the Primis DOT does not automatically defeat his claim, subrogation is similarly not appropriate here because the equities do not "'strongly favor'" him. *Id.* at 345 (emphasis omitted) (quoting *Fed. Land Bank*, 179 Va. at 405). Were subrogation granted in this case, Primis would face the same

danger as Centreville Car Care; namely, Mahaley and NFCU could simply initiate a "friendly foreclosure," leaving Primis with little to none of the proceeds. Further, like Centreville, Primis was undersecured—the Primis DOT was initially in an inferior priority position to the BANA and Wells Fargo DOTs, and the Arlington property sold for less than the $2 million secured by the Primis DOT. Thus, as in *Centreville*, Primis undoubtedly received a substantial benefit when its lien advanced in priority. But the alternative, if subrogation were granted, would be for any benefit to inure to the party who was negligent in performing Mahaley's title search. Assuming a third party was responsible for the failure to discover the Primis DOT, Mahaley or NFCU could have sought recourse against that party, rather than by seeking subrogation.[10] Primis, however, would be left with little or no recourse to enforce its lien.

Notwithstanding the above, Mahaley lists several facts that he believes weigh the equities in his favor. He notes that Primis threatened the Metterses with foreclosure in 2018, prior to the conveyance to Mahaley, but took no action. This argument is easily disposed of. Primis had no obligation to foreclose immediately once Loan 212 was in default,[11] and nothing in the complaint indicates why Primis chose not to in 2018. There are no allegations that Primis sought to prejudice a subsequent purchaser's interest by waiting to foreclose.

Mahaley also argues that the *Centreville* Court's concern that the subrogee would be prejudiced because the obligor would have little incentive to pay the subrogee to protect their equitable interest does not exist in this case. He argues this is because the Metterses signed a separate commercial guaranty with Primis in 2008 to pay Loan 212. But, simply put, a contractual relationship between Primis and the Metterses, entered *prior* to Primis securing Loan

---

[10] We offer no opinion on the availability or merits of alternative remedies for Mahaley or NFCU.

[11] *See* Code § 8.01-242 ("No credit line deed of trust . . . shall be enforced after forty years from the date of the credit line deed of trust . . . .").

212 with separate collateral, has no bearing on Primis's expectation that Loan 212 would continue to be secured by the Arlington property. For the same reason, Mahaley noting that Metters has since paid some of the balance of Loan 212 does not impact our analysis.

In sum, we acknowledge that Mahaley has been placed in a difficult position, likely because of a negligent title search. Nonetheless, under *Centreville*, the equities do not "strongly favor" Mahaley, and Primis would be prejudiced by granting subrogation in this case. We accordingly affirm the circuit court's dismissal of Counts IV and V of Mahaley's complaint.

B. Because the circuit court erred in finding the Primis DOT modification void ab initio, it must reconsider its dismissal of the claims against Metters.

Lastly, Mahaley assigns error to the circuit court's dismissal of his claims against Metters in the event that this Court reverses the circuit court's judgment against Primis. Mahaley claimed breach of the warranty of title, constructive trust, and fraud against the Metterses. At trial, Bettye Metters moved to strike the claims against her. During argument on the motion, counsel for Mahaley specifically noted that the claims against Metters were made "in the alternative, if the Primis lien is valid." The circuit court acknowledged potential inconsistency between finding against Primis on the validity of the modification and finding against Metters, given that the claims against Metters were contingent on Primis having a valid lien: "If I deny [Metters's] motion, it's being denied because there's a prima facie case that the lien is valid. How do I do both things at once?" Ultimately, in its memorandum opinion, the circuit court avoided this inconsistency because it first found that the Primis DOT modification was void ab initio, and then granted Metters's motion to strike.

The circuit court correctly acknowledged potential inconsistency were it to have denied Metters's motion to strike while simultaneously finding against Primis. It is apparent that the circuit court, understandably, did not feel the need to expound on its reasons for dismissing the claims against Metters in light of its judgment against Primis. Because we have now reversed

that judgment and found that the modification was valid, we remand to the circuit court to reconsider its dismissal of Counts III, VII, and VIII against Metters and offer no opinion on the merits of those claims.

## CONCLUSION

Although the circuit court correctly resolved pretrial the issues of standing, subrogation, and the effect of the modification's waiver clause, the circuit court erred in each of its grounds for finding against Primis at trial, and it erred by failing to apply the conclusive presumption set forth in Code § 55.1-602. We accordingly affirm in part, reverse in part, and remand for the circuit court to dismiss the claims against Primis and reconsider its dismissal of the claims against Metters.

*Affirmed in part, reversed in part, and remanded.*